Hear ye, hear ye, this Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Robert D. McLaren presiding, along with Justice Anne B. Jorgensen and Justice George Bridges. The case is number 2180217, People of the State of Illinois, Plaintiff-Appellee v. Mark Allen Gaines, Defendant-Appellant. Arguing for the Appellant, Christopher McCoy. Arguing for the Appellee, David Friedland. Thank you. Counsel, you may proceed. May it please the Court, Counsel, my name is Christopher McCoy from the Office of the State Appellate Defender, and I represent Mr. Mark Gaines. Your Honors, today we're not arguing that Mr. Gaines made a smart decision in this case. We're not arguing that his actions were wise or prudent. Instead, what we are arguing is that, well, he did make a series of dumb mistakes. This was not a criminal action, and certainly not one that amounted to the Class X felony of aggravated kidnapping. And what's missing here, in terms of aggravated kidnapping, is the element of confinement. The Illinois Supreme Court has defined confinement as, quote, the act of imprisoning or restraining someone, end quote. Quite simply, in this case, Mr. Gaines did not imprison J.F. He did not restrain her. If a normal layperson were to hear the facts of this case, that's not how they would describe it. Excuse me. They would not describe it as being imprisoned or restrained. Because these words imply that there's some action used to overcome resistance. It implies that there's an opposing force that the defendant is moving against. Here, the trial evidence simply didn't suggest any such coercive force. There was no evidence of an expressed or implied threat. Mr. Gaines didn't display a weapon. He didn't use physical restraints. In fact, there's no evidence that he even touched J.F. at all during that day. Now, tellingly, J.F. never testified that she didn't feel free to leave at any point during that day. And this is bolstered by the surveillance video from the gas station, which was introduced at trial. In that video, there's no signs of force. If you watch it, it just looks like two people going about their normal day. And this was someone that J.F. was familiar with. It wasn't a stranger. In fact, she referred to Mr. Gaines as Uncle Mark. So again, this is just a family friend who made a bad reaction to J.F. missing her bus that morning. Hypothetically, if all of the facts in this case were the same, except that the defendant here was J.F.'s quote-unquote aunt and not her uncle, so in other words, if the defendant was Melissa Gaines and not Mark Gaines, this case would feel a lot different. And when we have a male defendant, and especially with a young female victim, there's just a kind of general feeling of uneasiness, a little cringeworthy, if you will. But this feeling of uneasiness doesn't substitute for proof of confinement. It doesn't relieve the state of their burden of proof, and it doesn't mean that this is a Class X felony. The state, on the other hand, argues that confinement occurred when J.F. was taken to an apartment and didn't know how to get home. Now, we're not disputing these facts, but they were still not evidence of confinement, and they were certainly not proof beyond reasonable doubt. Because Mr. Gaines never told J.F. that she couldn't leave the apartment or otherwise indicated that she wasn't free to go home, and for her part, J.F. never indicated that she wanted to leave or expressed any reluctance at being there. The apartment door was not locked. Mr. Gaines didn't take J.F. to a place where she was completely alone, either. He took her to this apartment where there were two other people, two adult women, in fact, and Mr. Gaines never said anything to the effect of that J.F. couldn't talk to these women. And once they actually did get into the apartment, Mr. Gaines didn't really interact with J.F. at all. He was taking a nap, and she was watching cartoons on the couch. And so for these reasons, Mr. Gaines simply did not imprison or restrain J.F. in this case. My last point is that this conclusion that there was no confinement is all the more apparent when you examine some of the less serious detention-related offenses that are in Section 10 of the Criminal Code. And today, there's three in particular I'd like to highlight, those being unlawful restraint, luring a minor, and finally, harboring a runaway. And my point with these other offenses is that they're closer to the defendant's conduct in this case, to what actually happened, but tellingly, the defendant didn't even do enough to qualify for these less serious offenses, which bolsters our position that he also didn't do enough to commit the more serious, the Class X offense of aggravated kidnapping. So just briefly looking at these offenses one at a time, first with unlawful restraint, that's a Class IV felony, and the legislature with that offense prohibited unlawfully detaining another. And it's telling that they used the word detention instead of confinement when describing this less serious offense. So that supports the idea that detention is less serious than confinement, but even here, it doesn't seem that the defendant detained J.F., and so naturally, he didn't confine her either. Second, with luring a minor, also a Class IV felony, it contains a laundry list of elements, but relevant here, that offense prohibits contacting a minor with the intent to lure that minor away from their home or another location known by the parents for an unlawful purpose, and the defendant must be a stranger to the victim's parents. Now, that's closer to the situation we have here, but still, the legislature put to commit this Class IV felony that there has to be an unlawful purpose, and there has to be a stranger, which again, doesn't really fit this situation. And the final offense is harboring a runaway, which we mentioned in our opening brief. It's a Class A misdemeanor. It prohibits someone from, without the parent's consent, knowingly giving shelter to a minor for more than 48 hours. Again, closer to what happened here, but this case, the entire case, really only lasts about six hours, and so it's far from the 48 hours there. And so again, just to sum up my point with these other offenses, they seem to be much closer to the defendant's actions in this case than aggravated kidnapping, but the facts here still don't do enough to qualify the defendant to have committed a Class IV felony or even the Class A misdemeanor. So the fact that the defendant needed to do more to commit these lesser offenses, again, supports our position that he also didn't do enough to commit the Class X felony of aggravated kidnapping. So in conclusion, to go back to what I said at the beginning, what we're left with is just a series of dumb mistakes, not a criminal action, and certainly not a Class X felony. So for these reasons, Mr. Gaines respectfully asked this court to reverse his conviction for aggravated kidnapping, and at this time, I'd be happy to take any questions. Thank you. Justice Bridges, do you have any questions? Yes, I do. Thanks. Mr. McCoy, my question is, when the father called the defendant in this case and asked him if he had seen J.F., in other words, if he knew where she was at and he responded no, doesn't that satisfy the secret confined as provided in People v. Gonzales? No, it doesn't, Your Honor. And I believe the important thing to remember is that, talking about Gonzales, the question there was whether or not the confinement was secret. There wasn't really an issue of whether there was confinement in the first place. So what we are arguing here is the opposite. We're arguing that there was no confinement, not that if there was a confinement, that it wasn't secret. You don't agree that the defendant's conduct isolated J.F. from meaningful contact with her father? That definition goes to whether or not a confinement would be secret. In Gonzales, the court separately defined confinement from secret. It provided separate definitions for each word. And again, confinement was defined as to imprison or restrain someone. And that wasn't done in this case. In terms of the defendant talking to J.F.'s father, that didn't confine her. J.F. didn't even hear that conversation. So if it's, you know, obviously he lied. Again, another mistake by the defendant, but that lying to the father was not proof of the act of confinement. J.F. testified that while she was in the apartment, she didn't know where she was, correct? That's correct. So wasn't she in a position, so she wasn't in a position to leave the apartment. And because she didn't know where she was, then doesn't that amount to confinement? Well, no, because there's just no evidence that had she asked to go home, that the defendant or one of the other people in the apartment would not have taken her home. And I mean, it is telling that as soon as Mr. Gaines talked to J.F.'s father, he immediately took her back home. So there's just not enough to say that being in the apartment imprisoned or restrained her, even though she didn't know where she was. And let me ask you this. You agreed that J.F., while in the defendant's girlfriend's apartment, that she was no longer in the public view, is that correct? Yes, that's correct. Thank you, Mr. McCoy. Justice McClain, I have no further questions. Thank you. Justice Jorgensen, do you have any questions? My question is about the aggravated kidnapping statute that says that a person commits the offense of kidnapping when they secretly confine another against their will. And if that person is under the age of 13, the confinement is with... They are confined if it is without the consent of their parent. How do we get around that and accept your theory? Well, I think it's important to look at what the actual language... You're discussing subsection B, and what that says is that the confinement of a child under 13 years is against the child's will if that confinement is without the consent of the child's parent or guardian. So that is discussing the against the will element, not the confinement element. In fact, it's kind of... That definition is assuming that a confinement took place if that confinement is without the consent of the child's parent. So those are two separate elements that the state has to prove. Well, respectfully, if I am in a place against my will, aren't I confined? Again, the... I mean, I think we have to distinguish when we do have... Excuse me, a child victim versus an adult victim. When we have a child victim, the against the will element, as you've stated, really isn't up to their will. But you still have to prove the confinement element. And that confinement element does kind of overlap with the against the will in that it has to be some type of imprisonment or restraint. So you do look at kind of what the defendant did and... Let me back up. I guess the confinement would be the defendant's actions and the against the will would be the victim's reaction. And so you would have... The defendant would have to affirmatively do something to imprison or restrain whether or not the against the will element has been satisfied. And your position, again, is bringing her to an apartment where she's out of the public view and doesn't know where she is, is not confinement. It's not confinement. Again, some of those things would go to whether or not a confinement was secret. But how the Supreme Court has explicitly defined this is imprison or restrain. And again, just being inside an apartment doesn't mean that you are necessarily imprisoned or restrained. Okay. Justice McClernand, I have no other question. Thank you. I have a question or two. Is mens rea a factor or an element in determining confinement? Well, obviously, there is a knowing element to aggravated kidnapping. But our argument is more about, I guess, the actus reis... ...than the mens rea. So, it's what act did the defendant do as opposed to... We're not really arguing intent in this case. Well, where I'm going or at least what I'm attempting to address is the fact that if the defendant had told the father with that first phone call that he had the child and left it at that without an explanation at that time, would that have indicated that this wasn't a confinement because he didn't intend it to be one? Because he was candid and he was not deceitful. And I believe jurors can determine that deceit is evidence of guilt. Maybe I'm wrong about that, but it seems to be the case. So, is his deceit when talking with Alex indicia of confinement to the extent that it establishes a mens rea and that he was intending to confine the girl? I would argue that it does not because, first of all, what he does immediately after speaking to Alex is take J.F. home. By all accounts, they leave the apartment right after that. So, if he really did intend to confine her, that kind of cuts against him taking her home cuts against that mens rea. And, again, I think it more goes back to, you know, yes, he did lie. I mean, we can't get around that. He lies to the father. He lies to the police. And, you know, the state at trial argues that consciousness of guilt. But, I mean, that kind of begs the question consciousness of what? I mean, once the defendant talks to the father, he sort of realizes that he messed up, that he did something wrong. So, he knows that he made a mistake, but does that mean he's conscious of trying to confine J.F.? And, again, we argue that it's not because there's just no element of imprisoning or restraining. And how or whom is to make this determination? Is it a standard based upon what a reasonable person would perceive, or is it based upon something other than what a reasonable person would perceive? Or, in this case, is it based upon what a reasonable child would believe? Well, the case law doesn't really answer that question. And, in this case, I don't believe that the court needs to address that because under either standard objective or subjective, I mean, there's no indication to J.F. that she can't leave, that she has to go with the defendant. And so, objectively, there's nothing. And then subjectively, I mean, she never testifies that she didn't feel free to leave that day or that she was being held against her will, if you were. I have no further questions. Does the panel have any other questions? No, sir. I do not. Thanks. Thank you. Thank you, Mr. McCoy. You will have an opportunity to make rebuttal. Mr. Friedland? Yes. You may proceed. Thank you, Your Honor. May it please the court. Counsel, my name is David Friedland. I represent the Appalachian people of the state of Illinois. Your Honor, in this case, the defendant took an 11-year-old girl from her school bus stop without her father's knowledge and kept her in his girlfriend's apartment with no way to leave for over five hours. Only the defendant knew of her whereabouts. And as has been discussed, he lied to her father, he lied to the police, and he lied to other people about who she was and where she was. He isolated her, restricted her movement, and therefore he confined her. And he's guilty of aggravated kidnapping, and the court should affirm his conviction. Now, the defendant is not challenging the credibility of the witnesses, and he does not contest that the victim's whereabouts were secret from her father. And the defendant admits lying to her father about where the victim was. And counsel is conceding that the element of secrecy was satisfied. And so this sufficiency of the evidence claim is purely based on whether the legal definition of confinement has been satisfied. And as has been mentioned, confinement is defined as the act of imprisoning or restraining someone. And in Gonzalez, the court importantly noted that whether someone is confined depends on the facts and circumstances of the case. And so in this case, the facts clearly show that the victim was confined. And in his argument and in his reply brief, the defendant is arguing specifically that although the victim's location was not public, he argues that she wasn't imprisoned or restrained. And he's reading in an additional argument that the defendant never touched or physically restrained the victim in any way. He didn't threaten her. And ultimately, in his reply, he states that the defendant did nothing to limit or restrict J.F.'s movement. And that's just simply untrue. And so the defendant's argument fails for two reasons. First of all, it's factually untrue. And secondly, it's legally incorrect in that it reads in an additional element that the defendant physically restrained or limited the victim's movement. In any event, the defendant's argument that there was no confinement in the case was heard and rejected by the jury. And I'll address first the factual contradictions and then the legal argument. The determination of whether the defendant limited or restricted this victim's movement was an issue of fact for the jury under Gonzalez. And his argument that the defendant didn't restrain her movement is completely contradicted by the facts. Again, the defendant led the victim to a completely foreign location, his girlfriend's apartment, and she was there for at least three hours and a total away from her father of five hours with no way to leave. He told the maintenance worker at his girlfriend's apartment that the victim was his goddaughter, which illustrates his attempt to insulate himself from the suspicion of being with a young girl in the morning of a school day. And then he went to sleep shortly after they arrived at the apartment. The victim testified she had no cell phone. She didn't know where she was. She was with people she did not know who did not know her. The defendant's girlfriend testified it was weird and she didn't know where she lived in relation to that location. So essentially, this victim here was at the total mercy of the defendant. And so under these facts, the defendant, her movement was restricted and she was confined. These circumstances are particularly bizarre, given the close relationship between the victim and the defendant. If this if he wanted to spend the day with her, he easily could have asked her friend, his friend for permission. And then, as your honor's pointed out, the multiple lies that the defendant told throughout the day are indicative of a guilty conscience. His lies are over and over again. He lied to the victim about her school bus being late in order to take her to the park that morning. He lied to the maintenance worker about who she was. He lied to his good friend, the victim's father, about where his daughter was, even while his father, the father was frantically searching for her. He lied to the officer, saying that he had just found the victim and was bringing her home while the officer saw him walking back with the victim. He lied about where he took the victim that day to the officers. He said he took her to the to his house. It turned out he took her to his girlfriend's apartment. And finally, upon being returned home, the victim was crying, disheveled, messy, red faced. The jury here, although the defendant argues there's no credibility issue. The jury has the opportunity to observe the victim testify and certainly can has an opportunity to see her intellectual ability, her demeanor. Testimony established that the victim had a form of autism, which something presumably this close family friend like the defendant would know. And so the number of lies and the condition of the victim by this defendant show that he was in control of the victim's movement and whereabouts that day. In fact, she wasn't able to go home. He had to bring her home because she was in no position to leave or get back to her own apartment by herself. So in this case, the jury properly found that the defendant limited or restricted the victim's movement, and therefore the element of confinement was satisfied. And additionally, the defendant's argument is legally incorrect. He argues that he never did any anything physical to restrain the victim, such as touch or physically carry her. But there is no requirement in the definition of confinement. An individual's movement can be restrained without the physical act of touching or restraining. In addition, the suggestion that the victim was not confined because he would have taken her home if she'd have asked ignores the statutory presumption, as Justice Jorgensen pointed out, that the victim was there against her will. The section states that confinement is against 10-1B. Confinement is against that child's will within the meaning of this section if that confinement is without the consent of that child's parents or legal guardian. So even if she was free or said, hey, can you take me home? Those statements and that ability does not overcome the presumption that she was there against her will and that her movement was restricted. Under this theory, if a child was taken to Disneyland and is having a good time and says, oh, I want to go home or I don't want to go home, there could be no kidnapping because she's not confined because she wants to be there. And that's just simply not in the law. So in conclusion, the facts and the circumstances of this case demonstrate that the defendant took an 11-year-old girl to an unfamiliar place without her father's knowledge. And only he knew where she was. Only he could get her back to her father's house. Her movement was limited. Her interaction with the public was limited. He lied about her whereabouts to multiple people that day. And when she finally was returned, she was disheveled and crying. This is not an error in judgment. This is not a mistake or he should have done something different. This is a kidnapping. And therefore, we'd ask you to affirm the defendant's conviction. That concludes my argument. I'm now open to questions. Thank you, Justice Bridges. Do you have any questions? I do. Thank you, Justice. Counsel, does confinement require the victim's movement be restrained or restricted in any manner? I think yes. And that definition was taken from the defendant's brief says that her movement be restricted. And the definition of restrain set forth indicates that her movement be restricted. And that also came from Gonzalez as well. And and so my question is, is that in, as you pointed out, Gonzalez defined confinement as the act of imprisoning or restricting someone. What evidence would you point to in this case that established that defendant restrained or otherwise restricted J.S. movement? Well, she could not get home once she can't get home. And she's in an ability. Her movement is undoubtedly restrained. Her freedom of movement is an ability to to go anywhere is restricted. So one, especially once she's in an apartment without a cell phone, unable to contact her father, talk to anybody in the public other than these two people that she doesn't know, her movement is absolutely restricted. Her ability to get homes restricted, restrained. I mean, she is in prison. She's in that apartment and she can't get out. She can't get home. He's asleep. Factually, he's also asleep. Factually, when her father is looking for her and can't reunite with her, her movement is restrained and restricted. And counsel, Mr. McCoy told us that the bus had left and the descendant decided to take her to his girlfriend's house. My reading of the record suggests that he took J.S. before the bus arrived. Does that support your understanding of the evidence in this case? It does. It appears that because the bus waited seven minutes and the bus driver testified that the bus arrived on time, waited till I believe it was 617 and that the victim was never there. He, the defendant, follows the victim essentially out of her own house, sees her over at the bus stop. I mean, doesn't see her, I believe, follows her to the bus stop and takes her, tells her what appears to be a false time, that the time was actually 625 and the bus not must have been come or the bus had either not come or wasn't coming or whatever he says. But it appears that he lied to the victim about the time in order to get her away from the bus stop. So I think that certainly typically I'm sorry. No, continue. Oh, she typically would leave the home at 605 is what the record testimony. Correct. Yes. Thank you. I have no further questions. Thank you, Justice Jorgensen. Do you have any questions? Do you equate restraint with imprisonment? I don't. That's just the definition that came from Gonzalez. And so we should adopt the lesser standard of restraint rather than imprisonment. Well, it's an or in Gonzalez. The term confinement is broader than defendant claims and encompasses the act of imprisoning or restraining an individual. So I would argue both are satisfied here that she's in prison in the apartment and restrained her movement is restrained. OK. Is she restrained if she doesn't know she's restrained? Yes. She if she's if she doesn't know that she's restrained, if she can't get home, whether or not her knowledge or what how mature this 11 year old is or how she can get home or not get home when she actually realizes that. I don't think is important or germane. What's important is whether or not she actually is is is her freedom of movement restricted. And it is. And so whether or not she knows it or not, and your honor pointed out the statute presumes that she's there against her will with this older person, whether she thinks she can get out away from him or she thinks she can just walk home whenever she wants is really irrelevant because she can't. If she's taken all the way across home, despite if she thinks I can just get home, I'll just I'll just walk home. She could have the intellectual ability of a three year old or a four year old or something and not know she's that to me does not is not germane to whether or not she's restrained her thought or her ability. That's why the statute under 13 presumes that everything that confinement is against her. Well, as long as the parent doesn't know if the parent or guardian doesn't know. Okay. The defense makes an interesting argument that there were a multitude of far lesser offenses to class wars and bring a runaway at Class A that arguably fit this conduct. Is this just kind of overcharging. I don't think. Well, one word really is she really confined under the theory of aggravated kidnapping. Yes, she was. What I meant was, when you look at the spectrum of criminal acts that somehow inhibit the movement of another. You know, it does seem to be a graduated scale and confinement or imprisonment seems as Mr McCoy argued far afield from the conduct that was actually committed here. Well, I would begin by arguing. Sure. She he's guilty. She. The conduct in this case absolutely fits the statute. If you look at it, taking a 13 year old away from her father where he has no idea where she is, and taking it to a secret location, isolating her from her father, from the public, from her school, that's a kidnapping, whether or not there's additional lesser offenses. That's, I believe, a discretionary choice by the prosecutor. Sure. Her conduct or his conduct in this case may fit additional additional offenses. But this thing fast here. I absolutely support an aggravated kidnapping charge. And that's what the jury found. That's what the evidence support and they were in a position to view the victim's credibility and the defendant's credibility. He took this girl from her father, merely because there's other lesser included offenses or lesser offenses harboring a runaway that defendants. Sites. I believe I addressed in my brief. Shoot. Sorry. One moment. I agree with you. The, the elements of harboring a runaway are a little different. I agree with that. Is this aggravated kidnapping actually completed when he lies to Alex I My, my You're saying that you is the the kidnapping is completed when he lies. When he yes when he calls Alex back after I believe it's his girlfriend says Alex is called. He's frantic, etc. The defendant calls him back and says, you know, no idea where she is. I believe the kidnapping was completed when she left the bus stop and she was unable to go back. If she was, if, if he she's with him as soon as she leaves the bus stop with the defendant. It's a secret from her father. And now the only issue is at what point is she confined at what point is her movement restricted, you could make the argument that perhaps at the park her movement isn't restrained because She could still walk home or something to that effect, or it may be at the gas station, but this is where the jury had the opportunity. She's an autistic individual. The defendant knows this is he preying on her. He lured her away from the bus stop. Has she been confined because her movements restricted her in prison. Is this person or this child able to Mentally or have the mental abilities to walk back from the park or to a gas station or know how to leave this defendant's Presence be like, you know what I want to go home. All that was before the jury and this person. Once she her movement was restrained. I heard The kidnapping was complete. I don't believe the lie. Is the, the actual completion of the crime. It's when her movement was restricted. And that's, I believe, again, an issue of fact for the jury. Okay, thank you. Just McLaren. I have no other questions. Thank you. Is the defendant during the trial seek any lesser included instructions. No, I didn't. I don't believe he did. Would it be fair to say that In interpreting the aggravated kidnapping statute that the Perspective. Is directed at the level of competence sophistication ambulatory abilities of the victim. Where I'm going with that question is the situation where the woman feigned pregnancy and walked off with a baby. And in that situation, the baby's ability to walk away was severely limited by the fact that it hadn't learned to walk yet. And so, in so far as that case was concerned. The facts relating to that kidnapping related to the nature and level of confinement for a child who cannot speak who cannot communicate who cannot walk who basically can only cry and breathe and Just exist as opposed to this individual and possibly A more sophisticated individual a 15 year old that's not autistic so Is the aggravated kidnapping statute based upon the totality of the circumstances or is it based upon some As I think it was Aquinas said a perfect model of a victim. Well, This this statute as a whole. I mean, when you break it down into all of the elements, whether something is secret is a totality of the circumstances, whether confinement is secret is a totality of the circumstances. And so I do believe that the the as you pointed out the ambulatory Abilities or mental abilities of the victim do come into play under those factual determinations. As the statute does have this under 13 the presumption that it's against that child's will to be there. So, but then looking at the facts. Of those elements of whether it's the secret confinement of this aggravated kidnapping statute was Satisfied you do would look at the an 11 year old is not an 11 year old is not an 11 year old. If the person is simply able to stand up and go They would have a much stronger argument if the kid had a cell phone or could just get herself home. They would have a stronger argument that there wasn't confinement. So certainly there is The condition of the victim or does Go towards the totality of the circumstances factually If that answers your question. I have no other questions. Does the panel have any other questions.  I do not. Thank you. Thank you. Thank you, Mr. Friedland. Thank you. Mr. McCoy, you may proceed. Your honors. The state mentioned multiple times in its argument. J.S. diagnosis with autism. That really doesn't become a factor in this case because there's simply no evidence that that diagnosis. Limited her movement in any way. There's really no evidence how that diagnosis affected her. What we do know is she was in fourth grade. Her father said she did chores at home, the dishes, the trash. She got ready for school. And the officer that interviewed Jeff that she was, quote, very high functioning. And that comports with the her trial testimony, reading her trial testimony. She gives appropriate answers. She's been Totally understanding of what she is, where she is and what she's describing to the court. So we're not saying that Autism could never be a factor on whether or not a victim is confined. But in this particular case, the state simply presented no evidence that that her diagnosis In any way contributed to her confinement. Another red herring thrown out by the state is J.F.'s appearance when she arrives back home. She had just been on a long walk on a warm day. Kids clothes don't stay perfectly pressed, you know, and the best of circumstances, let alone when they're walking across town for an extended period of time. Their hair doesn't stay perfectly in place. And she saw she arrived at a scene where there's multiple police officers present. Her father is upset. The normal reaction of a child is going to be to be upset in that situation. And when she talks to the police officers, she doesn't blame Mr. Gaines. In fact, her first reaction is to defend him. She says, Uncle Mark wouldn't hurt me. So Like the Autism, her appearance when she arrives at the scene really says nothing about whether she was imprisoned or restrained. And on that point, we are not arguing that this has to be a physical restraint. I mean, there's countless examples that you could think of where someone was imprisoned without physically being restrained. That's not what we're arguing. We're arguing physical or otherwise. There's simply no evidence that J.F. was confined. And again, how the Supreme Court has defined confinement is to be imprisoned or restrained. And how was that? How was she imprisoned when she's at the park? How was she imprisoned when she's at the gas station? And when she gets the apartment, there's just simply no evidence that she couldn't leave the apartment. And yes, she didn't know where she was. But again, there's no evidence that if she said, I wanted to go home, that the defendant would not have immediately taken her home, especially when he does do that right immediately after he talks to her father. So this is not confinement. This is not being imprisoned and not being restrained. And the final point I will make is this. I do not believe that the evidence from the trial record that you can say the bus arrived after the defendant left the bus stop. J.F. and her father say that she left for the bus station at 6.05. J.F.'s father said the defendant left five minutes later, which would be 6.10. And then J.F. testifies that they waited at the bus stop at one point, she says, for a little bit later, she says, for a very long time. And the bus driver says that they were there. She was at the stop from 6.10 to 6.17. So someone is mistaken about these times. And I don't think from the record we can imply any criminal intent from the defendant saying that her bus was either late or had already gone. Because either she was late or the bus was late. But saying that the defendant lied about the time is simply not supported by the record. And so with that, we again ask this court to reverse Mr. Gaines's conviction. And I welcome any more questions. Thank you. Justice Bridges, do you have any questions? I have no further questions. Thank you. Thank you. Justice Jorgensen, do you have any questions? I do not. Thank you. I have one question, and that is, you have no problem with the length of the sentence, assuming that the conviction was proper? We did not raise any sentencing issues on appeal. Okay. Are there any other questions based upon my question? I have no further questions. No, sir, I do not. Thank you. Okay. Thank you. The oral argument is completed. We will attempt to render a disposition in an apt time. Mr. Kaplan, you may close the proceedings.